WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fran S. Cunningham,<br><br>  Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>  Defendant. | No. CV 09-624-TUC-HCE<br><br>**ORDER** |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c).

Pending before the Court are Plaintiff's Opening Brief (Doc. 20) (hereinafter "Plaintiff's Brief") and Defendant's Opposition to Plaintiff's Opening Brief (Doc. 25) (hereinafter "Defendant's Brief"). For the following reasons, the Court remands this matter for further proceedings.

I.     PROCEDURAL HISTORY

On February 23, 2006, Plaintiff protectively filed with the Social Security Administration (hereinafter "SSA") an application for disability insurance benefits under Title XVI of the Social Security Act alleging an onset date of disability from August 1, 2004 due to depression, panic attacks and back problems. (TR. 114-121, 139-140). Plaintiff's application was denied initially and on reconsideration. (TR. 62-65, 70-73).

Plaintiff then requested a hearing before an administrative law judge. (TR. 74). The matter proceeded to hearing on April 8, 2009 before Administrative Law Judge (hereinafter

1  "ALJ") Larry E. Johnson. (TR. 19-41). At the April 8, 2009 hearing, Plaintiff, represented
2  by counsel, testified before the ALJ. (TR.22-32). Other witnesses at the April 8, 2009
3  hearing included medical expert Vincent Rousseau, M.D. (TR. 32-38), and vocational expert
4  (hereinafter "VE") George Bluth (TR. 38-41). On May 19, 2009, the ALJ denied Plaintiff's
5  claim. (TR. 52-61).

6  Plaintiff requested review by the Appeals Council. (TR. 13-16). On November 3,
7  2009, the Appeals Council granted Plaintiff's request for review and ruled, in part, in
8  Plaintiff's favor to the extent that the Appeals Council determined that "[f]or the period
9  beginning on March 11, 2009, the date the claimant attained age 55, Medical-Vocational
10 Rule 202.04 directs a finding of disabled." (TR. 6). The Appeals Council adopted that part
11 of the ALJ's decision that pertained to the period up to March 11, 2009. (*Id.*). The November
12 3, 2009 decision of the Appeals Council represents the Commissioner's final decision.

13 Plaintiff initiated the instant action to challenge the decision that she is not disabled
14 for the period from February 23, 2006 up to March 11, 2009. (Plaintiff's Brief, p.4).
15 Plaintiff does not dispute the determination that she is disabled after March 11, 2009. (*Id.*).
16 Plaintiff challenges the ALJ's decision on a very narrow issue: that Plaintiff's functional
17 limitations as found by the ALJ preclude the performance of the alternative work identified
18 by the VE and relied upon by the ALJ in rendering his decision.

19 II.    PERTINENT PORTION OF THE RECORD ON APPEAL
20      A.    The Vocational Expert's Testimony
21 At the hearing, the ALJ posed the following hypothetical question to VE Bluth:

22 Let's assume a residual functional capacity for light [sic] with unlimited sitting; standing/walking one hour at a time, looks like a four-hour total; with
23 a limit of five to 20 pounds lifting as noted by the doctor; with no excessive neck or overhead activity; and with limited bending, no crawling or climbing.
24 Would there be jobs in the light category for that degree of limitation?

25 (TR. 38). The VE responded that there are "jobs that would offer a sit/stand option that
26 might, that would fit into that category," and he cited the following jobs: cashier, assembly
27 worker, quality control inspector. (*Id.*). The VE further testified that these jobs would be
28 available even if: the employee's attention and concentration were limited to a moderate

- 2 -

1 degree; and "more frequent than one hour at a time change of position is required...." (TR. 39). The VE also testified that there are: 4,000 cashier jobs available in Arizona and 800,000 nationally; 4,000 assembly worker jobs available in Arizona and 800,000 nationally; and 2,000 quality control jobs available in Arizona and 300,000 nationally. (*Id.*).

Plaintiff's counsel based her question to the VE on the same hypothetical posed by the ALJ but added: assume the individual has moderate limitations in performing work within a schedule, making simple work-related decisions, completing a normal workday or week, and responding appropriately to changes in a work setting. (TR. 40). The VE testified that such an individual would not be able to perform any of the jobs he identified. (*Id.*).

### B. The ALJ's Findings

#### 1. Claim Evaluation

SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step sequential process. 20 C.F.R. §§404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the claimant is not disabled under the Act and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ then proceeds to step two which requires a determination of whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limited or restricted his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes that the impairment is not severe, the claim is denied. *Id*. If the ALJ makes a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled and no further inquiry is necessary. If a decision cannot be made based on the

claimant's then current work activity or on medical facts alone because the claimant's impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth step. The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (hereinafter "RFC")[1] to perform past work.   20 C.F.R. §§ 404.1520(e), 416.920(e). If the ALJ concludes that the claimant has RFC to perform past work, then the claim is denied. *Id.* However, if the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(f). 416.920(f). At step five, in determining whether the claimant retained the ability to perform other work, the ALJ may refer to Medical Vocational Guidelines (hereinafter "grids") promulgated by the SSA. *Desrosiers v. Secretary,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids are a valid basis for denying claims where they accurately describe the claimant's abilities and limitations. *Heckler v. Campbell,* 461 U.S. 458, 462, n.5 (1983). However, because the grids are based on exertional or strength factors, the grids do not apply where the claimant has significant nonexertional limitations. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir. 1993); *Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998). When the grids do not apply,  the ALJ must use a vocational expert in making a determination at step five. *Desrosiers,* 846 F.2d at 580.

### 2.    The ALJ's Decision

In his May 19, 2009 decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 23, 2006, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease, lumbar (mild) and cervical degenerative disc disease (moderate) (20 CFR 416.920(c)).

---

[1] RFC is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 4 -

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), with the ability to stand and walk 1 hour at a time, for a total of 4 hours, lift 20 pounds occasionally and 5 pounds frequently; no excess neck movement or overhead activities and limited bending.

\*\*\*

5. The claimant did not have any past relevant work (20 CFR 416.965).

\*\*\*

6. The claimant was born on March 12, 1954 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (20 CFR Part 404, 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

In determining whether a substantial adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the [M]edical-[V]ocational [R]ules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-

- 5 -

> Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 204.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light occupations, with a sit/stand option, such as cashier, with 4000 positions in Arizona and 800,000 nationally; assembly work, with the same numbers; there was always a quality control inspector, with 2000 in Arizona and 300,000 nationally. The vocational expert also testified that moderate mental limitations in attention, concentration, or pace would not prevent the person from performing the same positions in the same numbers.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> 10. The claimant has not been under a disability as defined in the Social Security Act since February 23, 2006, the date the application was filed (20 CFR 416.920(g)).
>
> ### DECISION
>
> Based on the application for supplemental security income filed on February 23, 2006, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(TR. 54-61).

### 3.  The Appeals Council's Decision

On November 3, 2009, the Appeals Council adopted in part and rejected in part the ALJ's decision. Specifically, the Appeals Council:

- 6 -

    1.    ...adopt[ed] all of the findings and conclusions of the Administrative Law Judge for the period beginning of [sic] February 23, 2006, the date of the SSI application up to March 11, 2009.

    2.    For the period beginning on March 11, 2009, the date the claimant attained age 55, Medical-Vocational Rule 202.04 directs a finding of disabled.

(TR. 6).

## III.    DISCUSSION

### A.    Argument

Plaintiff asserts that the ALJ is required to inquire of the VE on the record as to whether the VE's testimony is consistent with the occupational information supplied by the *Dictionary of Occupational Titles* (hereinafter "DOT"). Plaintiff argues that the ALJ failed to make such an inquiry on the instant record. Further, according to Plaintiff, the ALJ's determination of Plaintiff's RFC is inconsistent with the jobs of cashier, assembly worker, and quality control inspector as described in the DOT. Plaintiff further argues that the ALJ erred when he failed to solicit a sufficient explanation from the VE regarding conflicts between the VE's testimony and the DOT listings. Plaintiff requests remand for benefits or, alternatively, remand for further proceedings.

Defendant concedes that the ALJ erred in failing to ask the VE about any possible conflict between the VE's testimony and information provided in the DOT. (Defendant's Brief, p. 4). However, Defendant asserts that the error was harmless.

### B.    Standard of Review

An individual is entitled to disability insurance benefits if he or she meets certain eligibility requirements and demonstrates the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423, 1382. "'A claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy.'" *Penny,* 2 F.3d at 956 (*quoting Marcia v. Sullivan,* 900 F.2d

1 | 172, 174 (9th Cir. 1990)).

2 |       To establish a *prima facie* case of disability, the claimant must demonstrate an
3 | inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.
4 | 1984). Once the claimant meets that burden, the Commissioner must come forward with
5 | substantial evidence establishing that the claimant is not disabled. *Fife v. Heckler*, 767 F.2d
6 | 1427, 1429 (9th Cir. 1985).

7 |       The findings of the Commissioner are conclusive and courts may overturn the
8 | decision to deny benefits "only if it is not supported by substantial evidence or it is based on
9 | legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992)(citations omitted).
10 | Therefore, the Commissioner's determination that a claimant is not disabled must be upheld
11 | if the Commissioner applied the proper legal standards and if the record as a whole contains
12 | substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.
13 | 1990) (citing *Desrosiers*, 846 F.2d at 575-76; *Delgado v. Heckler*, 722 F.2d 570, 572 (9th
14 | Cir. 1983)). Substantial evidence is defined as such relevant evidence which a reasonable
15 | mind might accept as adequate to support a conclusion. *Jamerson v. Chater,* 112 F.3d 1064,
16 | 1067-68 (9th Cir. 1997); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1988). However,
17 | substantial evidence is less than a preponderance. *Matney,* 981 F.2d at 1019.

18 |       The Commissioner, not the court, is charged with the duty to weigh the evidence,
19 | resolve material conflicts in the evidence and determine the case accordingly. *Id.* However,
20 | when applying the substantial evidence standard, the court should not mechanically accept
21 | the Commissioner's findings but should review the record critically and thoroughly. *Day v.*
22 | *Weinberger*, 522 F.2d 1154 (9th Cir. 1975). Reviewing courts must consider the evidence
23 | that supports as well as detracts from the examiner's conclusion. *Id.* at 1156.

      C.    <u>Analysis</u>

25 |       "The Social Security Administration has taken administrative notice of the *Dictionary*
26 | *of Occupational Titles*, which is published by the Department of Labor and gives detailed

- 8 -

physical requirements for a variety of jobs."[2]  *Massachi v. Astrue,* 486 F.3d 1149, 1153 n.8 (9th Cir. 2007) (*citing* 20 C.F.R. §416.966(d)(1); *Prochaska v. Barnhart,* 454 F.3d 731, 735 (7th Cir. 2006)).  "In making disability determinations, the Social Security Administration relies primarily on the *Dictionary of Occupational Titles* for 'information about the requirements of work in the national economy.'" *Id.* 486 F.3d at 1153 (*quoting* SSR 00-4p at *2).  The ALJ may also use testimony form a vocational expert to obtain occupational evidence. *Id.*  The Ninth Circuit has held that:

> Although evidence provided by a vocational expert "generally should be consistent" with the *Dictionary of Occupational Titles,* "[n]either the [*Dictionary of Occupational Titles*] nor the [vocational expert]...evidence automatically 'trumps' when there is a conflict."  Thus, the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*

*Id.* (*quoting* SSR 004-p at *2) (bracketed text in original); *see also Johnson,* 60 F.3d at 1435 ("We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.").

In the instant case, it was "incumbent on the [Commissioner] at a minimum to come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration the requirements of the job as well as the claimant's age, education, and background."  *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d 1372, 1377(9th Cir. 1979) "Without other reliable evidence of a claimant's ability to perform specific jobs, the [Commissioner] must use a vocational expert to meet that burden." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Consistent with *Embrey,* the ALJ herein called upon a VE.[3]  When an ALJ uses a VE, the "[h]ypothetical questions posed

---

[2] "The DOT is 'the [Commissioner's] primary source of reliable job information.'...One purpose of the DOT is to classify identified job titles by their exertional and skill requirements." *Johnson v. Shalala,* 60 F.3d 1428, 1434 n.6 (9th Cir. 1995) (*quoting Terry v. Sullivan,* 903 F.2d 1273, 1276 (9th Cir. 1990)).

[3] The ALJ acknowledged that testimony from the VE was necessary because "the claimant's ability to perform all or substantially all of the requirements of..." the full range

- 9 -

to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." *Embrey*, 849 F.2d at 422 (emphasis in original).

### 1. Lifting Limitations

The ALJ found that Plaintiff could perform less than the full range of light work. (*See* TR. 61) ("the claimant's ability to perform all or substantially all of the requirements of this level of work [*i.e.,* light] has been impeded by additional limitations."); *see also* (TR. 54) (setting out Plaintiff's RFC)). The Commissioner defines "light work" as the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §416.967(b). *See also* SSR 83-10. However, the ALJ found that Plaintiff could lift 20 pounds occasionally and "5 pounds frequently...." (TR. 54). The ALJ's hypothetical question posed to the VE included assuming "a residual functional capacity for light [work]...with a limit of five to 20 pounds lifting...." (TR. 38). Although the VE identified three occupations that Plaintiff could perform, he did not cite specific DOT listings for these occupations. In adopting the VE's opinion, the ALJ did not cite specific DOT listings.

Plaintiff argues that her inability to lift no more than 5 pounds frequently precludes the performance of the alternative work identified by the ALJ. Plaintiff does not cite to specific DOT listings, however, Plaintiff asserts that "the three identified occupations of cashier, quality control inspector, and assembly worker are performed at the light level of exertion." (Plaintiff's Brief, at p. 11).

Defendant has not disputed that the occupations identified by the VE and, in turn, relied upon by the ALJ fall within the category of light work. Moreover, the ALJ indicated that the VE testified that a claimant with Plaintiff's RFC "would be able to perform the

---

of light work "has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (TR. 61).

- 10 -

1 requirements of representative *light work* occupations...." (TR. 61) (emphasis added). 2 Therefore, the record supports the conclusion that the occupations identified by the VE and 3 adopted by the ALJ fall within the category of light work. It follows, then, that a person 4 performing those occupations would need the RFC to frequently lift or carry "objects 5 weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Because Plaintiff is limited to carrying 6 up to 5 pounds frequently, there is a conflict between the DOT listing for light work and 7 Plaintiff's actual RFC. *See* SSR 96-8p (The RFC "is not the *least* an individual can do 8 despite his or her limitations or restrictions, but the *most.*") (emphasis in original). The Ninth 9 Circuit has made clear that if a conflict exists between the VE's testimony and the DOT, "the 10 ALJ must...determine whether a basis exists for relying on the expert rather than the [DOT]." 11 *Massachi,* 486 F.3d. at 1153.

12 Moreover, SSR 00-4p[4] is clear that when a VE provides evidence about the 13 requirements of a job or occupation, the ALJ "has an *affirmative responsibility* to ask about 14 any possible conflict between..." the VE's evidence and the information provided in the 15 DOT. SSR 00-4p at *4 (emphasis added). Specifically, the ALJ shall "[a]sk the VE...if the 16 evidence he or she has provided conflicts with information provided in the DOT." *Id.* If the 17 evidence appears to conflict with the DOT, "the ALJ must then determine whether the 18 vocational expert's explanation for the conflict is reasonable and whether a basis exists for 19 relying on the expert rather than the *Dictionary of Occupational Titles.*" *Massachi,* 486 F.3d 20 at 1153 (*citing* SSR 00-4p at *2).[5] Further,

---

[4]Social Security Rulings "reflect the interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Massachi,* 486 F.3d at 1152 n.6 (internal quotation marks and citations omitted); *see also Holohan v. Massanari,* 246 F.3d 1195, n.1 (9th Cir. 2001) ("SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference."). Additionally, once an SSR is published, it is "binding precedent upon ALJs." *Gatliff v. Commissioner of Social Security,* 172 F.3d 690, 692 n.2 (9th Cir. 1999).

[5]"SSR 00-4p gives examples of several reasonable explanations for deviating from the *Dictionary*. Among them are that the *Dictionary* does not provide information about *all*

- 11 -

> [w]hen vocational evidence provided by a VE...is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE...evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p at *4.

The record is clear that at the hearing, the ALJ did not inquire of the VE as to whether there was "any possible conflict between the VE...evidence and information provided in the DOT." SSR 00-4p at *4. (*See* TR. 38-40). There was no specific mention of the DOT during the VE's testimony. (*See* TR. 38-40). Although the ALJ stated in his decision that the VE's "testimony is consistent with the information contained in the [DOT]," (TR. 61), there is no basis in the record, including the ALJ's decision, as to how the ALJ arrived at this determination. The basis for the ALJ's conclusion is especially necessary in light of the conflict identified by Plaintiff. *See Massachi,* 486 F.3d at 1153-54. Consequently, as Defendant has conceded, the ALJ erred.

As in *Massachi*, the procedural error in the instant case "could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for [his] conclusion so as to justify any potential conflicts...Instead, we have an apparent conflict with no basis for the vocational expert's deviation." *Massachi,* 486 F.3d at 1154 n. 19. Moreover, to the extent Defendant argues that the ALJ's conceded error is harmless because Plaintiff's counsel did not raise the issue during the hearing, Defendant has not provided authority for the proposition that the failure of a claimant's counsel to raise the issue during the hearing renders such error harmless where an apparent conflict between the DOT and the VE's testimony exists that was not addressed by the ALJ in compliance with SSR 00-4p. (*See* Defendant's Brief, pp. 5-6 (*citing Carey v. Apfel,* 230 F.3d 131, 146-47 (5th Cir. 2000) (noting that "claimants should not be permitted to scan the record for implied or unexplained

---

occupations, information about a particular job not listed in the *Dictionary* may be available elsewhere and the general descriptions in the *Dictionary* may not apply to specific situations." *Massachi,* 486 F.3d at 1153 n.17 (*citing* SSR 00-4p at *2-*3).

1  conflicts...when the conflict was not deemed sufficient to merit adversarial development in
2  the administrative hearing" and also finding that there was no conflict); *Pires v. Astrue,* 553
3  F.Supp.2d 15, 25 (D.Mass. 2008) (noting that the plaintiff's counsel did not object to the
4  VE's testimony and finding, *inter alia,* that plaintiff raised only the possibility of a conflict
5  but did not "describe any clear dichotomy between the DOT and the [VE's] testimony....")
6  (internal quotation marks and citation omitted)).  SSR 00-4p states that the ALJ has "an
7  affirmative responsibility to ask about any possible conflict between the VE...evidence and
8  information provided in the DOT."  SSR 00-4p at *4.  This requirement is consistent with
9  the Supreme Court's observation that "Social Security proceedings are inquisitorial rather
10 than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both
11 for and against granting benefits...."   *Sims v. Apfel,* 530 U.S. 103, 111 (2000) (citation
12 omitted).  Even the *Carey* decision cited by Defendant noted that: "a vocational expert's
13 erroneous characterization of the exertional level or skills required to perform a particular
14 job calls into question both the probative value and reliability of the expert's testimony.
15 Likewise, an explained [sic] discrepancy between the ALJ's determination of the claimant's
16 residual functional capacity and the vocational expert's testimony that the claimant can
17 perform certain identified jobs with inconsistent skill requirements may require remand for
18 further exploration."  *Carey,* 230 F.3d at 147.  On the instant record, where there is an
19 apparent conflict with no basis for the VE's deviation from the DOT or for the ALJ's
20 decision to adopt the VE's testimony, the Court declines to find harmless the ALJ's conceded
21 error on the basis that Plaintiff's counsel failed to raise the issue at the hearing.

22     Given that Plaintiff has identified an actual conflict between the DOT and the VE's
23 testimony and given that there is no explanation in the record to resolve the conflict in favor
24 of the VE's position, this Court "cannot determine whether the ALJ properly relied on [the
25 VE's]...testimony."  *Massachi,* 486 F.3d at 1154.  As a result, this Court "cannot determine
26 whether substantial evidence supports the ALJ's..." finding that Plaintiff was not disabled
27 under the Act for the relevant time period.  *Id.* (remanding for further proceedings).
28

1            2.     Other Limitations

2 Plaintiff points to other inconsistencies between the VE's testimony and the DOT 3 which Plaintiff argues were not sufficiently resolved in the ALJ's decision adopting the VE's 4 testimony. For example, Plaintiff asserts that the DOT contains only 11 listings for quality 5 control inspector at the light level of exertion. (Plaintiff's Brief, p. 10 n. 5). However, all 6 11 "of the occupations require a specific vocational preparation beyond that of unskilled 7 work and consistent with skilled or semi-skilled work...In finding Ms. Cunningham disabled 8 pursuant to grid rule § 202.04, the Social Security Administration has determined that Ms. 9 Cunningham's work background is unskilled and therefore she cannot perform those 10 occupations." *Id.* (*See also* TR. 61 (ALJ indicated that he called the VE "[t]o determine the 11 extent to which [Plaintiff's]...limitations erode the *unskilled light* occupational base. 12 (emphasis added)). Defendant has not disputed Plaintiff's assertion on this issue. On this 13 record Plaintiff has identified a conflict between the VE's testimony and the DOT. Because 14 this conflict was not explored by the ALJ, the Court "cannot determine whether the ALJ 15 properly relied on [the VE's]...testimony" and "whether substantial evidence supports the 16 ALJ's..." decision. *Massachi,* 486 F.3d at 1154.

17 Plaintiff also points out that the ALJ found that Plaintiff could stand and walk 1 hour 18 at a time, for a total of 4 hours. (TR. 54). The full range of light level work requires the 19 ability to stand or walk "off and on, for a total of approximately 6 hours of an 8-hour 20 workday." SSR 83-10 at *6. *See also* 20 C.F.R. 404.916.967(b). "The demand for 'a good 21 deal of walking or standing' is 'the primary difference between sedentary and *most* light 22 jobs.'" *Willrodt v. Astrue,* 2010 WL 2850785, *2 (C.D. Cal. 2010) (*quoting* SSR 83-10 at *5) 23 (emphasis in original). Yet, "not *all* jobs that are classified as 'light work' require standing 24 or walking for six hours in an eight-hour day." *Id.* (emphasis in original). SSR 83-10 notes 25 that a job is in the light-work "category when it involves sitting most of the time but with 26 some pushing and pulling of arm-hand or leg-foot controls, which requires greater exertion 27 than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and 28 road-roller operator (skilled and semiskilled jobs in these particular instances). *Relatively*

- 14 -

*few unskilled jobs are performed in a seated position.*"[6] SSR 83-10 at *5 (emphasis added).

Defendant points out that the VE accounted for Plaintiff's limitations on standing and walking by testifying that the identified occupations "'offer a sit/stand option'...." (Defendant's Brief, p. 6 (*quoting* TR. 38)). Defendant asserts that "[b]ecause the DOT does not address sit/stand options, it is reasonable to infer that the [VE's] testimony was based on his experience, a proper basis for deviating from the DOT." (*Id.* at p. 6) (footnote omitted).

SSR 00-4p notes that "[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available...from a VE's...experience in job placement or career counseling. SSR 00-4p at *2. It may well be that the ALJ considered the availability of a sit/stand option as identified by the VE as evidence within the VE's experience that is consistent the DOT. Given the lack of clarification at the hearing and lack of explanation in the decision, the record is not entirely clear on this issue.

### 3. Remand

Plaintiff requests that the Court either reverse the Commissioner's decision and grant benefits or, alternatively, remand for further proceedings. (Plaintiff's Brief, p.1).

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

[6]Plaintiff has pointed out that she falls within the category of unskilled light work. (Plaintiff's Brief, p. 10, n.5; *see also* TR. 60-61).

- 15 -

*Benecke,* 379 F.3d at 593(citations omitted).   Where the test is met, "we will not remand solely to allow the ALJ to make specific findings....Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id*. (citations omitted).

As set forth *supra*, at III.C.1., the record presents a conflict between the DOT and the VE's testimony with regard to Plaintiff's lifting limitation set out in the ALJ's RFC finding. The ALJ did not comply with SSR 00-4p in addressing and resolving this conflict.   As a result, this Court is unable to determine whether substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled under the Social Security Act for the relevant period. In such a situation, the Ninth Circuit has directed the district court to remand the matter "so that the ALJ can perform the appropriate inquiries under SSR 00-4p." *Massachi,* 486 F.3d at 1154.   There is nothing in the instant record to support deviation from the *Massachi* Court's decision that remand for further proceedings is appropriate for such error. Accordingly, the Court will remand the matter "so that the ALJ can perform the appropriate inquiries under SSR 00-4p." *Id.*   On remand, the ALJ should also perform the appropriate inquiries under SSR 00-4p with regard to the other apparent inconsistencies relating to the occupation of quality control inspector and to Plaintiff's stand/walk limitations as discussed *supra*, at III.C.2.

**IV.   CONCLUSION**

For the foregoing reasons, remand for further proceedings is necessary so that the ALJ can perform the appropriate inquiries under SSR 00-4p as discussed within the body of this Order.

IT IS ORDERED that the Commissioner's final decision in this matter is REMANDED for further proceedings consistent with this Order. The Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED this 25th day of March, 2011.

_____
Héctor C. Estrada
United States Magistrate Judge

- 16 -